— FOR PUBLICATION —

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLAS S. FARBER; JOY MEREDITH MAGEE; SUSAN FARBER; and JOHN LEWIS FARBER,<br><br>     **Plaintiffs,**<br><br>  **v.**<br><br>TENNANT TRUCK LINES, INC., and SCOTT A. McMEEN,<br><br>     **Defendants.** | **CIVIL ACTION**<br><br>**NO.  14-5028** |

### OPINION

Before the Court are the Defendants Tennant Truck Lines Inc. ("Tennant") and Scott McMeen's Motions brought pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motions to Transfer Pursuant to 28 U.S.C. § 1404(a), ECF Nos. 3 & 13; and the Plaintiff's responses in opposition thereto, ECF Nos. 7, 10, and 16.

This case concerns the impact of two recent United States Supreme Court decisions, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 546 U.S. —, 131 S. Ct. 2846 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), on a federal court's authority to exercise general jurisdiction over a nonresident corporate defendant, consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  For the reasons that follow, both Defendants' motions to dismiss for lack of personal jurisdiction will be granted and the other motions will be denied.

## I.  FACTUAL HISTORY AND PROCEDURAL BACKGROUND

According to the allegations in the Complaint, this case arises out of a June 10, 2013, automobile accident that occurred on Interstate 80 in Colona, Illinois, when a tractor trailer

operated by Defendant Scott McMeen in the course of his employment for Defendant Tennant Truck Lines, Inc. crossed the median into the oncoming lane of traffic and collided with the rental vehicle in which the Plaintiffs Nicolas Farber and Susan Farber were passengers, causing them injuries.  *See* ECF No. 1.  The Plaintiffs involved in the accident, together with their spouses, filed a personal injury suit in this Court on August 29, 2014, alleging diversity jurisdiction under 28 U.S.C. § 1332.  *Id.*  On September 23, 2014, Tennant—the only defendant who had at that time been served—moved to dismiss the case for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a). *See* ECF No. 3.  Upon the Plaintiffs' request, the court granted limited jurisdictional discovery, and the Plaintiffs filed a supplemental response on November 26, 2014.  ECF Nos. 9-10.  After Mr. McMeen was served, he also filed a motion to dismiss on the same grounds as Tennant, on December 19, 2014.  ECF No. 13.  After a second round of jurisdictional discovery, the Plaintiffs filed a response to Mr. McMeen's motion.  ECF No. 23.

In essence, the Defendants argue that a court sitting in Pennsylvania cannot exercise either general or specific personal jurisdiction over Tennant, an entity incorporated in Illinois with its principal place of business in Illinois, or Mr. McMeen, an Illinois resident who was employed by Tennant, based on an accident that occurred in Illinois.  *See* ECF Nos. 3 & 13.  In response, the Plaintiffs argue that, based on Tennant's history of operations in Pennsylvania, its contacts rise to a sufficient level for a federal court in Pennsylvania to exercise general jurisdiction over Tennant.  ECF No. 10.  The Plaintiffs also argue that Mr. McMeen's driving history through Pennsylvania mandates that Pennsylvania courts can properly exercise general jurisdiction over him, as well.  ECF No. 16.  The Plaintiffs did not address the Defendants' specific jurisdiction

arguments in their response to either motion to dismiss, so the Court will not address them here.

*See Smith v. Nat'l Flood Ins. Program*, 156 F. Supp. 2d 520, 522 (E.D. Pa. 2001).

### A.     *Jurisdictional Facts Applying to Tennant*

In its supplemental response following jurisdictional discovery of Tennant, the Plaintiffs

provided the following facts in support of their claim of general jurisdiction over Tennant:

(1)   Tennant completed over 4600 deliveries and pick-ups in Pennsylvania in the years 2010–14;

(2)   Tennant earned between $878,609 and $1,621,525 in revenue in Pennsylvania in the years 2010–13, representing approximately 2.77% to 3.44% of its total revenue;

(3)   Tennant's vehicles traveled between 381,610 and 636,311 miles in Pennsylvania in the years 2010–14;

(4)   Tennant drivers purchased between 68,751 and 103,848 gallons of gas in Pennsylvania in the years 2010–14;

(5)   Tennant made payments totaling over $1.7 million to Pennsylvania-based carriers in the years 2010–14;

(6)   Tennant made payments totaling over $517,000 for "other Pennsylvania payments" in the years 2010–14;

(7)   At the time of the accident, Tennant employed 3 individuals based in Pennsylvania, who were permitted to garage Tennant's vehicles during their home time (approximately 34 hours every two weeks);

(8)   Tennant withheld $7,156.52 in Pennsylvania State Payroll Withholding Tax in the years 2010–14;

(9)   Tennant filed a Pennsylvania RCT-101 Return Summary (Corporate Tax Report), required for all Pennsylvania S Corporations and LLCs conducting business in Pennsylvania, in each year 2010–13, and paid $622 in corporate taxes;

(10)  Tennant's automobile insurance policies provide coverage in accordance with Pennsylvania law; and

(11)  Tennant's workers' compensation policies provided coverage in accordance with Pennsylvania law.

ECF No. 10 at 2-5.  In its Motion to Dismiss, Tennant provided the following jurisdictional facts,

based on the affidavit of Sandra R. Ingle, its Vice President of Safety:

(1)  Tenant is an Illinois corporation with its principal place of business in Colona, Illinois, that provides trucking services to the Mid-Atlantic, Southeastern, and Midwestern United States;

(2)  Tenant has terminals in Augusta, Georgia, and Baltimore, Maryland, and a shipping lot in Wichita, Kansas;

(3)  Tenant has no place of business, terminals, or shipping lots in Pennsylvania;

(4)  Tenant is not incorporated, organized, or existing under the laws of Pennsylvania;

(5)  Tenant does not have any offices, places of business, or bank accounts in Pennsylvania;

(6)  Tenant does not own real property in Pennsylvania or maintain any mailing addresses or telephone listings in Pennsylvania; and

(7)  Tenant does not have an appointed agent for service of process in Pennsylvania.

ECF No. 3-1 at 2-3 & Ex. A.

**B.**    ***Jurisdictional Facts Applying to McMeen***

In its supplemental response following jurisdictional discovery of Mr. McMeen, the

Plaintiffs provided the following facts in support of their claim of general jurisdiction over Mr.

McMeen:

(1)  Mr. McMeen completed a cargo pickup in Pennsylvania on April 25, 2013;

(2)  Mr. McMeen completed fourteen trips that took him through Pennsylvania during the years 2012 and 2013, during his employment with Tenant prior to the accident; and

(3)  Mr. McMeen was employed by Roadlink between October 2010 and February 2012, a company whose website maintains a service center in Philadelphia, Pennsylvania.

ECF No. 16-3 at 3-5.  In his Motion to Dismiss, Mr. McMeen provided the following jurisdictional

facts, based on his own affidavit:

(1)  Mr. McMeen is a resident of Milan, Illinois, in Rock Island County;

(2)  Mr. McMeen resided in Milan at the time of the accident;

(3)     Mr. McMeen was a "lifelong resident of the Quad Cities area";[1]

(4)     Mr. McMeen has no relatives in Pennsylvania and has no business interests there;

(5)     Mr. McMeen was employed by Tennant between April 4, 2012, and June 10, 2013; and

(6)     Other than the April 25, 2013, cargo pick-up, Mr. McMeen never made other pick-ups or deliveries in Pennsylvania during his employment with Tennant.

ECF No. 13-1 at 3-4 & Ex. A.  The motions are now ripe for consideration.

## II.     LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether in personam jurisdiction actually lies."  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  When a defendant files a motion to dismiss pursuant to Rule 12(b)(2), the burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff, and "[w]hile the Court can accept plaintiff's allegation of jurisdiction as true for the purposes of a motion to dismiss, 'once a defendant has raised a jurisdictional defense, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.'"  *Gutierrez v. N. Am. Cerruti Corp.*, No. 13-3012, 2014 WL 6969579, at *2 (E.D. Pa. Dec. 9, 2014) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F. 2d 141, 147 (3d Cir. 1992)) (citation and internal quotation marks omitted).

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1986).  Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over nonresidents to the "fullest

---

[1]  The Court takes judicial notice that the "Quad Cities" is a region in northwestern Illinois and southeastern Iowa whose core consists (despite its name) of five principal cities:  Rock Island, Moline, and East Moline, Illinois; and Davenport and Bettendorf, Iowa.

extent allowed under the Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b).  The Due Process Clause of the Fourteenth Amendment to the Constitution permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

III.  **DISCUSSION**

Based on the parties' briefing, the dispositive issue for the Court to decide is whether, in the wake of *Goodyear* and *Daimler*, Pennsylvania can exercise general jurisdiction over:  (a) an Illinois corporation with its principal place of business in Illinois which does a fair amount of business in Pennsylvania, as set forth herein; and (b) an individual domiciled in Illinois who has engaged in business travel that has taken him through Pennsylvania but who has no other contacts in Pennsylvania.

A.  *General Jurisdiction Over Tennant*

After remaining silent on general jurisdiction for more than a quarter decade after deciding *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984), the Supreme Court has ruled on two general jurisdiction cases within the last four years:  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  In Tennant's motion to dismiss, it argues that the "proper [jurisdictional] inquiry" is whether the Plaintiffs have shown that "the defendant's connections with the forum state are 'so "continuous and systematic" as to render [the corporation] essentially at home in the forum state,'" and it argues that the Plaintiffs have failed to satisfy this inquiry.  ECF No. 3-1 at 6 (quoting *Goodyear*, 131 S. Ct. at 2853-54).  Tennant further argues that "despite doing

business in Pennsylvania, [it] is not subject to personal jurisdiction in Pennsylvania" because, in *Daimler*, "the Supreme Court explicitly rejected the notion that every state in which a corporation engaged in a 'continuous and systematic course of business' could exercise general jurisdiction over the corporation." *Id.* at 7 (citing *Daimler*, 134 S. Ct. at 760-61).

### 1.     *Goodyear*

In *Goodyear*, after a bus accident near Paris, France, resulted in the death of two 13-year-old North Carolina boys, their parents filed suit in North Carolina state court against Goodyear USA (an Ohio corporation) and three foreign subsidiaries. 131 S. Ct. at 2851-52. Although Goodyear USA consented to North Carolina's authority over it, the foreign subsidiaries moved to dismiss for lack of personal jurisdiction, alleging that they had no place of business, employees, or bank accounts in North Carolina; that they did not design, manufacture, or advertise their products in North Carolina; and that they did not solicit business in North Carolina or sell or ship tires to North Carolina customers. *Id.* at 2852. The North Carolina court of appeals found that because the bus accident occurred in France and the tire alleged to have caused the accident was also manufactured and sold abroad, North Carolina did not have specific jurisdiction over the foreign subsidiaries. *Id.* The court, however, did hold that because some of the tires manufactured by the foreign subsidiaries ended up in North Carolina through the so-called "stream-of-commerce theory," the state could exercise general jurisdiction over the subsidiaries. *Id.* at 2852-53.

Justice Ginsburg, for a unanimous Court, wrote that a court "may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Id.* at 2851 (citing *International Shoe*, 326 U.S. at 317). By invoking the stream-of-commerce analysis, however, the North Carolina court "elided

the difference between case specific and all-purpose (general jurisdiction)," for while flow of a manufacturer's products into the forum may support a finding of specific jurisdiction, *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), such ties to the forum based on a product "do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant," *Goodyear*, 131 S. Ct. at 2855-56 (citing *Stabilisierungfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 203 n.5 (D.C. Cir. 1981) (Ginsburg, J.) (holding that although defendants' marketing arrangement were "adequate to permit litigation of claims relating to [their] introduction of . . . wine into the United States stream of commerce," this arrangement "would not be adequate to support general, 'all purpose' adjudicatory authority")).  "A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"  *Id.* at 2856 (quoting *International Shoe*, 326 U.S. at 318).

The Supreme Court cited *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)—the "textbook case" in which general jurisdiction was "appropriately exercised over a foreign corporation that has not consented to suit in the forum."  *Goodyear*, 131 S. Ct. at 2856. Benguet, the defendant, was a mining company incorporated under the laws of the Philippines, which ceased its mining operations during the Japanese occupation of the Philippines in World War II.  The president of Benguet moved to Ohio where he maintained an office and carried on work on behalf of the company:  he kept office files there, he engaged in company-related correspondence there, he drew and distributed salary checks there, he used two bank accounts there carrying substantial amounts of company funds, he used another bank there as transfer agent for company stock, he held directors meetings there, he supervised policies dealing with the rehabilitation of the corporation's Philippines properties there, and he dispatched funds from

there to cover purchases of machinery. *Perkins*, 342 U.S. at 447-48. The Supreme Court held that "Ohio's exercise of jurisdiction was permissible" because, based on these contacts "'Ohio was the corporation's principal, if temporary, place of business.'" *Goodyear*, 131 S. Ct. at 2856 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 n.11 (1984)).

The Court noted that the next case to address general jurisdiction, *Helicopteros*, came out the opposite way. There, survivors of United States citizens who died in a helicopter crash in Peru filed wrongful-death suits in Texas state court against the Colombian corporation which owned and operated the helicopter. The defendant foreign corporation's contacts with Texas "consisted of sending its chief executive officer to Houston for a contract-negotiation session accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas enterprise] for substantial sums; and sending personnel to [Texas] for training." *Helicopteros*, 466 U.S. at 416. The Court found that these contacts did not rise to the level of sufficiency as found in *Perkins*, and the exercise of general jurisdiction over the defendant was inappropriate, ultimately holding that "mere purchases [made in the forum state], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 415-16, 418.

Turning to the claim at issue in *Goodyear*, the Supreme Court held that the North Carolina court's "sprawling view of general jurisdiction" could not be maintained, as such a view would render any substantial manufacturer or seller of goods open to suit wherever its products are distributed. *Goodyear*, 131 S. Ct. at 2856. Unlike the defendant in *Perkins*, the Goodyear subsidiaries were "in no sense at home in North Carolina," and subjecting them to general jurisdiction there was thus improper. *Id.* at 2857.

2.      *Daimler*

In *Daimler*, the defendant DaimlerChrysler Aktiengesellschaft, a German corporation, was sued in California state court by Argentinian residents who brought suit under the Alien Tort Statute and the Torture Victims Protection Act, alleging that Daimler's Argentinian subsidiary collaborated with state security forces to kidnap, detain, torture, and kill the plaintiffs or their relatives during Argentina's military dictatorship of 1976–83.  134 S. Ct. at 751.  The plaintiffs alleged that Daimler was subject to general jurisdiction in California based on the California contacts of its subsidiary, Mercedes-Benz USA (MBUSA).  *See id.* at 752.  MBUSA, a Delaware corporation with a principal place of business in New Jersey, is Daimler's exclusive importer and distributor in the United States.  The plaintiffs argued that MBUSA's contacts with California were systematic, continuous, and substantial enough to permit California courts to exercise general jurisdiction over Daimler, despite MBUSA's state of incorporation and principal place of business being located out of state.  The plaintiffs alleged that MBUSA "has multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine"; that MBUSA "is the largest supplier of luxury vehicles to the California market"; and that MBUSA's "California sales account for 2.4% of Daimler's worldwide sales."  *Id.* at 760.  But even if those contacts were imputable to Daimler, the German corporation was not "at home" in California:

> If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [Daimler's] sales are sizable.  Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  General jurisdiction over Daimler was therefore improper.

The Supreme Court reminded that *International Shoe* distinguished between situations in which a state could exercise specific jurisdiction—where "the commission of some single or occasional acts of the corporate agent in a state" may be sufficient to subject the corporation to jurisdiction in that state with respect to suits arising out of that in-state activity, 326 U.S. at 318—and situations where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities," *id.*; *see also Helicopteros*, 466 U.S. at 414-16 & n.9.  Although the inquiry in the cases decided in the over twenty-six years after *Helicopteros* focused on whether the defendant's contacts with the forum state rose to the level of "continuous and systematic" sufficient to subject the defendant to general jurisdiction within the state, *see, e.g.*, *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107-109 (3d Cir. 2009); *Provident National Bank*, 819 F.2d at 437-38; *Ciolli v. Iravani*, 651 F. Supp. 356, 363-65 (E.D. Pa. 2009); *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1051-55 (E.D. Pa. 1994), the Supreme Court makes clear in *Daimler* that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the state are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" 134 S. Ct. at 461 (quoting *Goodyear*, 131 S. Ct. at 2851).

The high Court went on to explain that in all but the most exceptional circumstances, a corporation is "at home" only in the two "paradigm[] . . . bases for general jurisdiction":  its state of incorporation and its principal place of business.  *Id.* at 760-61 & n.19.  These "affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  *Id.* at 760.  Limiting general jurisdiction to only those fora in which a

corporation is "at home" allows entities "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," while "afford[ing] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 760, 762 (citations and internal quotation marks omitted). Of course, the Court did not "foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19 (citation omitted). In *Perkins*, for example, cited again in *Daimler* as the exemplar for general jurisdiction, Ohio could readily be considered "a surrogate for the place of incorporation or head office" and, as such, general jurisdiction could be exercised there. *Id.* at 756 n.8.

### 3.    The Import of *Goodyear* and *Daimler*

Notwithstanding the above, the Plaintiffs assert in their Opposition that the standard the Court should follow in this case can be found in *Streamline Business Services, LLC v. Vidible, Inc.*, No. 14-1433, 2014 WL 4209550 (E.D. Pa. Aug. 26, 2014), a case in which the court utilized a *Helicopteros*-era "quality and nature of the defendant's contacts over a reasonable amount of time" test to determine whether those contacts rise to the level of "continuous and systematic" and in which it used a list of objective criteria commonly utilized in cases in this District to assist in making the determination. *Id.* at *5-6 (citing *Henning v. Suarez Corp.*, 713 F. Supp. 2d 459, 465 (E.D. Pa. 2010)); *see also, e.g.*, *Verona v. U.S. Bancorp.*, No. 08-4104, 2009 WL 466450 (E.D. Pa. Feb. 23, 2009); *Farina v. Nokia*, 578 F. Supp. 2d 740, 751 (E.D. Pa. 2008); *Gaylord v. Sheraton Ocean City Resort & Conference Ctr.*, No. 93-0463, 1993 WL 120299 (E.D. Pa. Apr. 15, 1993). This Court declines to follow this standard. The Court would

be remiss to follow *Streamline Business Services* and similar cases' instructions in light of *Goodyear* and *Daimler*'s "essentially at home" language and the overwhelming post-*Daimler* acknowledgement that *Goodyear* and *Daimler* restrict a state's ability to subject a nonresident corporate defendant to general personal jurisdiction. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (recognizing that after *Goodyear* and *Daimler* "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) (reversing a district court's grant of general jurisdiction where *Daimler* was handed down after oral argument; the defendant was not "an exceptional case" sufficient to justify the exercise of general jurisdiction); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (noting that *Daimler* "makes clear the demanding nature of the standard for general personal jurisdiction over a corporation"); *Snodgrass v. Berklee Coll. of Music*, 559 F. App'x 541, 542 (7th Cir. 2014) (mem.) (applying *Goodyear* and *Daimler*'s "essentially at home" standard in finding general jurisdiction improper); *see also, e.g.*, *AstraZeneca AB v. Mylan Pharm., Inc.*, — F. Supp. 3d —, 2014 WL 5778016, at *2 (D. Del. Nov. 5, 2014) ("Recent Supreme Court opinions confirm that . . . general jurisdiction—often referred to as 'all-purpose' jurisdiction—'[has played] a reduced role.'" (quoting *Daimler*, 134 S. Ct. at 755)); *Estate of Thompson v. Mission Essential Personnel, LLC*, No. 11-0547, 2014 WL 4745947, at *2 (M.D.N.C. Sept. 23, 2014) (applying the "stringent principles articulated most recently in *Daimler*" to decline to exercise general jurisdiction over a nonresident corporate defendant); *World Traveling Foods, LLC v. Diamond Aircraft Indus., Inc.*, No. 11-61670, 2014 WL 4102160, at *4 (S.D. Fla. Aug. 18, 2014) (holding that a previous, lower standard for general personal jurisdiction was not met, "let alone the more stringent standard set forth in *Goodyear* and *Daimler*.").

13

There have been no precedential opinions in the Third Circuit concerning general jurisdiction since before both *Goodyear* and *Daimler* were decided.  This Court—based on its analysis of *Goodyear* and *Daimler*, its own review of the post-*Daimler* legal landscape, and given that every circuit court to analyze the effect of *Goodyear* and *Daimler* on general jurisdiction jurisprudence has concluded, either directly or indirectly, that the unadorned "continuous and systematic" contacts standard for determining general jurisdiction is no longer viable in light of those cases[2]—finds that *Goodyear* and *Daimler*'s more stringent "essentially at home" standard is the operative standard to follow in determining whether general jurisdiction is proper.  Accordingly, as the Supreme Court held, "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the state are so "continuous and systematic" as to render [it] essentially at home in the forum State.'"  *Daimler*, 134 S. Ct. at 461 (quoting *Goodyear*, 131 S. Ct. at 2851); *see also AnnexTelecom Co. v. Brown*, No. 13-4605, 2014 WL 5149101, at *4 (E.D. Pa. Oct. 14, 2014) (recognizing that many Pennsylvania district courts "have indeed treated the 'at home' language as a precedential requirement, and not illustrative" (quoting *Colony Nat'l Ins. Co. v. DeAngelo Bros., Inc.*, No. 10-0401, 2014 WL 1315391, at *4 n.3 (M.D. Pa. Mar. 28, 2014))); *Munsif v. Am. Bd. of Internal Med.*, No. 11-5949, 2012 WL 3962671, at *6 (E.D. Pa. Sept. 11, 2012).

Turning now to the case at bar, the relevant facts adduced by the Plaintiffs in support of a finding of "regular[] and systematic[]" business contacts sufficient to find general jurisdiction are as follows:

(1)     Tennant completed over 4600 deliveries and pick-ups in Pennsylvania between 2010 and 2014;

---

[2]  *See Gucci America*, 768 F.3d 122 (Second Circuit), *Monkton*, 768 F.3d 429 (Fifth Circuit), *Snodgrass*, 559 F. App'x 541 (Seventh Circuit), and *Martinez*, 764 F.3d 1062 (Ninth Circuit), cited *supra*.

(2)    Tennant maintains employees based in Pennsylvania;

(3)    Tennant permits those employees to garage company vehicles in
Pennsylvania during their home time (34 hours every two weeks);

(4)    Tennant paid approximately $7,000 in Pennsylvania State Withholding Tax
between 2010 and 2013 and approximately $600 in Pennsylvania Corporate
Taxes between 2010 and 2013;

(5)    Tennant earned approximately $878,000 to $1.6 million in yearly revenue
between 2010 and 2013, largely increasing year over year;

(6)    Tennant drivers have traveled approximately 381,000 to 636,000 miles on
Pennsylvania roads between 2010 and 2013, largely increasing year over
year; and

(7)    Tennant drivers have purchased approximately 69,000 to 104,000 gallons of
gasoline in Pennsylvania between 2010 and 2013.

ECF No. 10 at 6-8.  Tennant's relevant facts are thus:

(1)    Tennant is an Illinois corporation with its principal place of business in
Colona, Illinois;

(2)    Tennant has no place of business, terminals, or shipping lots in
Pennsylvania;

(3)    Tennant is not incorporated, organized, or existing under the laws of
Pennsylvania;

(4)    Tennant does not have any offices, places of business, or bank accounts in
Pennsylvania;

(5)    Tennant does not own real property in Pennsylvania or maintain any mailing
addresses or telephone listings in Pennsylvania; and

(6)    Tennant does not have an appointed agent for service of process in
Pennsylvania.

ECF No. 3-1 at 2-3 & Exhibit A.

Even in the light most favorable to the Plaintiffs, this allegedly regular and systematic

conduct is insufficient to subject Tennant to general jurisdiction in Pennsylvania under *Goodyear*

and *Daimler*.  Although those cases "do[] not hold that a corporation may be subject to general

jurisdiction *only* in a forum where it is incorporated or has its principal place of business,"

*Daimler*, 134 S. Ct. at 760, they do "make clear that even a company's 'engage[ment] in a

substantial, continuous, and systematic course of business' is alone insufficient to render it at

15

home in a forum," *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir.)
(per curiam) (quoting *Daimler*, 134 S. Ct. at 761), *cert. denied*, 134 S. Ct. 2888 (2014). "A
corporation is *not* 'at home' in 'every state in which it engages in a substantial, continuous, and
systematic course of business.'" *Locke v. Ethicon Inc.*, — F. Supp. 3d —, 2014 WL 5819824, at
*3 (S.D. Tex. Nov. 10, 2014) (emphasis in original) (quoting *Daimler*, 134 S. Ct. at 760).

General jurisdiction on the whole "calls for an appraisal of a corporation's activities in
their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762 n.20 (citation omitted). A
multistate shipping corporation, like Tennant, that "operates in many places can scarcely be
deemed at home in all of them," because otherwise, "'at home' would be synonymous with
'doing business' tests" utilized by courts before the advent of specific jurisdiction. *Id.*
According to the Supreme Court, nothing in the jurisprudential history of personal jurisdiction
since *International Shoe* "suggests that 'a particular quantum of local activity' should give a
State authority over a 'far larger quantum of . . . activity' having no connection to any in-state
activity." *Id.* Applying the above considerations to the present circumstances, the workers
Tennant employs who live in Pennsylvania, the miles its workers drive in Pennsylvania, the
revenue its workers generate from pick-ups and drop-offs in Pennsylvania, under *Daimler*, do
not together operate to render Tennant "at home" in Pennsylvania and subject it to general
jurisdiction here. *Id.* at 760; *cf. Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438, 443 (D. Del.
2013) ("[I]t cannot be inferred that Chiquita's ownership of a facility in Delaware, movement of
its products through Delaware, and sale of its products in Delaware make Chiquita 'at home' in
Delaware. . . . The Supreme Court seemed to reject the idea that national or international
corporations are subject to general jurisdiction throughout the United States.").

If Tennant's activities "sufficed to allow adjudication of this [Illinois]-rooted case" in Pennsylvania, "the same global reach would presumably be available in every other State" in which Tennant's revenue, number of pick-ups and drop-offs, and amount of highway travel are sizable. *Daimler*, 134 S. Ct. at 761.  If that were the case, Tennant—or, indeed, any company, shipping or otherwise, with a multistate business presence—could hardly be able to "structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit," as it would potentially be subject to general, all-purpose jurisdiction in several states. *Burger King*, 471 U.S. at 472.  Due process does not allow such a "sprawling view of general jurisdiction." *Goodyear*, 131 S. Ct. at 2856.  Mere deliveries in Pennsylvania, even occurring at regular intervals, are insufficient to justify Pennsylvania's assertion of general jurisdiction over Tennant in causes of action unrelated to those deliveries. *Helicopteros*, 466 U.S. at 418.  The Plaintiffs have not alleged or shown that Tennant is any more active in Pennsylvania than in any other state in which it delivers cargo. *Cf. Chavez*, 947 F. Supp. 2d at 443.  Tennant has affirmed that its state of incorporation and principal place of business are in Illinois, and its activity in Pennsylvania does not reach the near–principal-place-of-business, essentially-at-home level of activity suitable to permit a finding of general jurisdiction in cases like *Perkins*.  To hold otherwise, utilizing some formulation for general jurisdiction based on whether "a corporation merely 'engages in a substantial, continuous, and systematic course of business [in the forum state],'" would be "'unacceptably grasping.'" *Intellectual Ventures I LLC v. Ricoh Co.*, — F. Supp. 3d —, 2014 WL 4748703, at *3 (D. Del. Sept. 12, 2014) (quoting *Daimler*, 134 S. Ct. at 761).[3]  Thus, the exercise of general jurisdiction over Tennant would be improper and does not comport with due process.[4]

---

[3]  Furthermore, the payment by Tennant of withholding and corporate taxes, combined with the above, "plainly do[es] not approach" the threshold level of contact required by *Goodyear* and *Daimler*; this payment does not

Since *International Shoe*, the origin of modern jurisdiction, the Supreme Court has maintained that "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." 326 U.S. at 318, *cited in Goodyear*, 131 S. Ct. at 2856. In light of *Goodyear* and *Daimler*, this Court will not disturb that reasoning. Accordingly, Tennant's motion to dismiss for lack of personal jurisdiction will be granted.[5]

**B.    General Jurisdiction Over Mr. McMeen**

Under *Goodyear* and *Daimler*, the "paradigm forum" in which an individual defendant is amenable to general jurisdiction is the individual's domicile. *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853) (internal quotation marks omitted). This is a concept, of course, which dates back to the Supreme Court's 1940 decision in *Milliken v. Meyer*, in which the Court first propounded the consideration of "traditional notions of fair play and substantial justice" as part of the jurisdictional inquiry. 311 U.S. at 463. Domicile aside, however, it remains largely unclear whether a state may exercise general jurisdiction over any *nonresident* defendant. *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (declining to address the issue in detail, but recognizing that "[i]t may be that [general jurisdiction] applies only to corporations"); *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 97 (D. Del. 2002) ("Whether general jurisdiction applies to individuals is unclear."); *Hoechst v. Celanese*

---

create the "exceptional case" in which general jurisdiction in a state other than the state of incorporation and principal place of business *would* be justified. *Daimler*, 134 S. Ct. at 761 n.19; *see also United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 61 n.3 (D.D.C. 2004) (declining to find that the filing of tax returns and corporate reports "constitute transacting business of a continuous and systematic nature"); *cf. Perkins*, 342 U.S. at 448.

[4]   The Plaintiffs do not address *Daimler* or its holding head-on; their only attempt to circumvent *Daimler* is in distinguishing it from the present case on the grounds that they are residents of the forum, while the *Daimler* plaintiffs were not. ECF No. 10 at 9. Contrary to the Plaintiffs' characterization, *Daimler* does not turn on the domicile of the plaintiff bringing suit and is not distinguishable on those grounds for present purposes.

[5]   Because the Court is granting the motion to dismiss for lack of personal jurisdiction, it declines to address Tennant's improper venue argument.

*Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1193 n.4 (M.D. Fla. 1995) ("Nor is it clear that general jurisdiction can ever be held over a private, non-resident defendant.").  Recognition of this lack of clarity is consistent with previous decisions in this District which state only that, for example, "General jurisdiction over an individual defendant is based on the individual's presence or domicile in Pennsylvania when served or on the individual's consent to jurisdiction." *Mass. School of Law at Andover, Inc. v. ABA*, 855 F. Supp. 108, 111 (E.D. Pa. 1994).  In *Mass. School of Law*, the court made quick work of its analysis as to whether Pennsylvania could exercise general jurisdiction over a nonresident individual defendant:

> [The defendant] has stated in his affidavit that he has never lived in Pennsylvania.
> [The plaintiff] does not offer evidence of either in-state service or of consent.
> Therefore, I find that there is no basis for the exercise of general personal jurisdiction
> over [the defendant].

*Id.* (footnote omitted); *see also Comerota v. Vickers*, 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001) ("To assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." (citing 42 Pa. Cons. Stat. § 5301(a)(1)); *accord Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit.").

The Plaintiffs in their Opposition include a lengthy list of trips Mr. McMeen made in the scope of his employment with Tennant that took him through Pennsylvania at one point or another and also include the fact that he once picked up cargo in Pennsylvania—contending that this history suffices to show that Mr. McMeen's contacts with Pennsylvania "are so continuous and systematic as to render [him] essentially at home" here.  ECF No. 16-3 at 7-8.  As an initial matter, this argument misstates the law:  the Pennsylvania personal jurisdiction statute provides

that the "carrying on of a continuous and systematic part of its general business" basis of jurisdiction applies to corporations, partnerships, limited partnerships, partnership associations, professional associations, unincorporated associations, or similar entities—not individuals. 42 Pa. Cons. Stat. § 5301(a)(1)–(3). Furthermore, the facts that the Plaintiffs put forth regarding Mr. McMeen's business travel have no bearing in the face of decisions like *Mass. School of Law*, *Comerota*, or *Decker*, which unequivocally permit the exercise of general jurisdiction in Pennsylvania only over a nonresident individual who (1) lives here, (2) was served here, or (3) consented to suit here. The Plaintiffs have cited no authority to the contrary, merely concluding without support that "[j]urisdiction is proper in Pennsylvania." ECF No. 16-3 at 9. Jurisdiction is ***not*** proper in Pennsylvania.

The Plaintiffs vigorously contend that because Mr. McMeen deliberately did not disclose business travel taken to or through Pennsylvania prior to April 2012, the Court should construe that fact in the light most favorable to them by treating his *omission* of information as an *admission* of substantial contacts with Pennsylvania during that time. *See id.* at 9 n.5 (citing *Mellon Bank (E.) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Accepting this proposition does not change the law in Pennsylvania. Domicile, presence, consent: none of these three jurisdictional categories apply to Mr. McMeen here. He is domiciled in Illinois, *see* ECF No. 1; he was served in Illinois, *see* ECF No. 11; and he has not consented to be sued in Pennsylvania. Accordingly, the exercise of general jurisdiction over Mr. McMeen in Pennsylvania is improper, and his motion to dismiss for lack of personal jurisdiction will be granted.[6]

---

[6] Because the Court is granting the motion to dismiss on personal jurisdiction grounds, it declines to address Mr. McMeen's improper venue argument.

**IV.      CONCLUSION:  TRANSFER OF VENUE**

If a district court lacks jurisdiction over a matter, "the court shall, if it is in the interest of justice, transfer such action . . .  to any other such court in which the action . . . could have been brought at the time it was filed."  28 U.S.C. § 1631.  Transfer under this section is appropriate where "(1) jurisdiction is wanting in this court, (2) transfer is in the interest of justice, and (3) the action could have been brought in the transferee court at the time it was filed in this court." *Rodriguez v. Bush*, 367 F. Supp. 2d 765, 772 (E.D. Pa. 2005).  As this Court has determined that it lacks personal jurisdiction over both Defendants, the Court finds it is in the interests of justice to transfer this matter to an appropriate district, rather than dismiss the case and force the Plaintiffs to refile and restart in another jurisdiction.  Based on the Court's review of the record—given Tennant's state of incorporation and principal place of business, Mr. McMeen's domicile, and the location of the accident giving rise to this cause of action and the relevant witnesses thereto— the most appropriate transferee district is the U.S. District Court for the Central District of Illinois.

An appropriate Order follows.


Dated:  **February 9, 2015**



                                                                **BY THE COURT:**

                                                                **/S/WENDY BEETLESTONE, J.**

                                                                _____

                                                                **WENDY BEETLESTONE, J.**